WALLACE, Judge.
In this case we are asked to determine whether the “trust exception” to the requirements of the claims provisions of the Florida Probate Code is applicable to the claim of a former co-tenant based on the joint ownership of two accounts that the decedent reestablished in his sole name without the knowledge or consent of the co-tenant. Because the decedent’s act of reestablishing the accounts in his name alone amounted to an assertion of beneficial ownership in the accounts before his death, we conclude that the trust exception is inapplicable. Consequently, the co-tenant was required to file a statement of claim in the probate proceeding for the decedent’s estate within the time allowed under section 733.702, Florida Statutes (2002), or her claim arising from her previous joint ownership of the two accounts with the decedent would be barred. The co-tenant failed to timely file a statement of claim. Accordingly, we affirm the probate court’s order that granted motions filed by one of the heirs to dismiss two petitions seeking to determine the “ownership” of the accounts as impermissible requests for court authorization to pay a time-barred claim. We also affirm the probate court’s order denying the co-tenant’s petition to extend the time for filing a claim because no abuse of discretion has been shown.
THE FACTS
Elliott Stephen Scott (the Decedent) died intestate on June 4, 2003. The Decedent was survived by his wife of eighteen years, Deborah Jean Scott (Mrs. Scott). The Decedent was also survived by his adult daughter by a previous marriage, Melissa Scott Reyes (Ms. Reyes).
The facts pertinent to this appeal are alleged in the two petitions Mrs. Scott filed in the probate court seeking a determination of the status of the two accounts that she formerly held jointly with the Decedent. The probate court’s order granted motions filed by Ms. Reyes and dismissed both of these petitions. For purposes of our review, we assume the facts alleged in these petitions to be true, and we construe them in the light most favorable to Mrs. Scott as the nonmoving party. See Blanton v. City of Pinellas Park, 887 So.2d 1224, 1226 (Fla.2004); Hosp. Constructors Ltd. v. Lefor, 749 So.2d 546, 547 (Fla. 2d DCA 2000).
During his lifetime, the Decedent and Mrs. Scott established two joint accounts that became the subject of contested proceedings in the probate court. The first of these accounts was a joint investment account at a brokerage firm (the Brokerage Account). The second account was a joint money market account, held as a tenancy by the entireties, at a local bank (the Money Market Account). In August 2002, the brokerage firm received a letter purportedly signed by Mrs. Scott with instructions *15 to remove her name from the Brokerage Account. Without further inquiry or notice to Mrs. Scott, the brokerage firm complied with the letter’s instructions and retitled the Brokerage Account in the Decedent’s name alone. In addition, shortly before his death, the Decedent withdrew all of the funds in the Money Market Account and deposited the proceeds in a new bank account titled in his sole name. The Decedent did not notify Mrs. Scott of the withdrawal of the funds from the Money Market Account or of the deposit of the funds in the new account.
After the Decedent’s death, Mrs. Scott discovered that the Brokerage Account had been re-titled in the Decedent’s name alone as a result of the removal of her name from the account. She also learned that the Decedent had transferred the funds from the Money Market Account into a new account in his sole name. The brokerage account was valued at approximately $544,000 at the date of the Decedent’s death. Mrs. Scott’s petitions did not allege the amount of the funds transferred from the Money Market Account to the new account in the Decedent’s name alone. Mrs. Scott denied signing the letter of instructions or authorizing anyone to sign her name to it. She hired a document examiner to compare the signature on the letter of instructions that had been delivered to the brokerage firm with known specimens of her signature. The document examiner concluded that the signature on the letter to the brokerage firm was a forgery.[1]
THE PROCEDURAL HISTORY
Mrs. Scott filed a petition for administration of the Decedent’s estate in the Pasco County Circuit Court, and letters of administration were issued to her. The date of the first publication of notice to creditors for the Decedent’s estate was July 31, 2003. In accordance with section 733.702, creditors of the Decedent were required to file their claims within the later of three months of the first publication of the notice, i.e., on or before October 31, 2003, or as to reasonably ascertainable creditors, thirty days after service on the creditor. Mrs. Scott did not timely file a claim in the estate based on her previous joint ownership of the two accounts with the Decedent and his reestablishment of the accounts in his sole name.
On February 5, 2004, Mrs. Scott, in her capacity as personal representative, filed a “Petition for Court Order Pursuant to Florida Statutes, Sections 733.603 and 733.610.” This petition recited the facts concerning Mrs. Scott’s previous joint ownership of the two accounts with the Decedent and the reestablishment of the accounts in his name. As personal representative of the estate, Mrs. Scott requested the entry of “an Order determining whether the Brokerage Account and the Money Market Account are probate or nonprobate assets.”
On April 21, 2004, separate counsel filed a notice of appearance for Mrs. Scott individually. The next day, Mrs. Scott — acting in her individual capacity — filed a “Petition for Declaration of Rights” in the estate administration proceeding. Invoking section 86.041, Florida Statutes (2003), Mrs. Scott’s individual petition requested the entry of “an Order determining and declaring the ownership interest in the money market account and the brokerage account, directing the personal representative to act in accordance with this Court’s *16 determination and declaration of those rights.”
Ms. Reyes moved to dismiss both petitions on the ground’ that Mrs. Scott had failed to file a creditor’s claim as required by section 733.702(1), and that any claim she might have had based on the ownership of the two accounts was therefore barred. Ms. Reyes characterized each of the petitions as a “thinly veiled attempt to circumvent the Florida Probate Code.” On June 4, 2004, Mrs. Scott — acting in her individual capacity — filed a petition requesting an extension of time to file a creditor’s claim if the probate court ruled “that a claim is a prerequisite to a determination of ownership of the accounts in question.”
THE PROBATE COURT’S RULING
The probate court held a hearing on all three petitions. At the hearing, Mrs. Scott conceded that she had not filed a claim within the claims period, but she argued that it was not necessary for her to file a claim to assert her ownership interest in the two accounts. After the hearing, the probate court entered an order that made the following findings of fact:
1. The matters raised in the Petition for Court Order Pursuant to Florida Statutes Sections 733.603 and 733.610 and Petition for Declaration of Rights which are subject to the motions to dismiss should have been raised in a Statement of Claim and no cause of action exists for such Petitions;
2. No claim by Debra Scott was timely filed herein; and
3. There is no basis for extending the time for filing such a claim set forth in the Petition to Extend[.]
Based on these findings, the probate court not only dismissed both of the petitions seeking a determination of the ownership of the accounts but also denied Mrs. Scott’s petition for an extension of time to file a claim. Mrs. Scott has taken an appeal from this order both in her capacity as personal representative and individually.
THE STANDARDS OF REVIEW
Our review of the probate court’s order dismissing Mrs. Scott’s two petitions seeking a determination of the status of the two accounts is de novo. Blanton, 887 So.2d at 1226; Belcher Ctr. LLC v. Belcher Ctr., Inc., 883 So.2d 338, 339 (Fla. 2d DCA 2004). On the other hand, we consider the probate court’s order denying Mrs. Scott’s petition for an extension of time to file a claim under an abuse of discretion standard. Miller v. Estate of Baer, 837 So.2d 448, 450 (Fla. 4th DCA 2002); Scutieri v. Estate of Revitz, 510 So.2d 1003, 1004 (Fla. 3d DCA 1987).
DISCUSSION
Generally speaking, the provisions of section 733.702 bar any claim or demand against a decedent’s estate that arose before the death of the decedent which is not
filed in the probate proceeding on or before the later of the date that is 3 months after the time of the first publication of the notice to creditors or, as to any creditor required to be served with a copy of the notice to creditors, 30 days after the date of service on the creditor, even though the personal representative has recognized the claim or demand by paying a part of it or interest on it or otherwise.
§ 733.702(1); see Fla. Prob. R. 5.490. The requirements of section 733.702 apply to claims that are unmatured, contingent, or unliquidated as well as to claims for personal property in the possession of the personal representative. § 733.702(1). The bar imposed by section 733.702 is a statute of limitations, not a statute of non- *17 claim. May v. Ill. Nat'l Ins. Co., 771 So.2d 1143, 1150-54 (Fla.2000). However, a claim not filed as required by the statute is “barred even though no objection to the claim is filed unless the court extends the time in which the claim may be filed.” § 733.702(3); May, 771 So.2d at 1152-53. The statutory grounds for an extension of time to file a claim are limited to fraud, estoppel, and insufficient notice of the claims period. § 733.702(3). Some exceptions to the general requirement to file a claim are recognized by statute. See § 733.702(4). Other claims are excluded from the operation of the statute by case law. See generally Frank T. Pilotte, Creditors’ Claims and Family Allowance, in Practice Under Florida Probate Code §§ 8.37.42 (Fla. Bar CLE 4th ed.2005). One of the categories of claims excluded by case law from the operation of the statute is claims falling within the so-called “trust exception.” We turn now to an examination of this exception to the requirements of the statute.
Before the Florida Probate Code (the Code) became effective on January 1, 1976, Florida courts had recognized an exception to the requirements for creditors to file claims in the probate proceeding imposed by the statutory predecessors of section 733.702. This exception was “variously referred to as the ‘trust exception,’ the ‘equitable title or beneficial ownership exception[,]’ or the ‘specifically identifiable property exception.’ ” See Velzy v. Estate of Miller, 502 So.2d 1297, 1299 (Fla. 2d DCA 1987). For example, the Supreme Court of Florida held that the statute did not require a beneficiary of an express trust to file a claim in the estate of a deceased trustee to recover property of the trust estate “because the trust property was not an asset of the decedent’s estate.” Sewell v. Sewell Props., Inc., 159 Fla. 570, 30 So.2d 361, 363 (1947). In a case decided after the adoption of the Code, the Third District applied the trust exception to authorize the recovery of money from an estate without the filing of a claim where the decedent had held funds as a trustee in accordance with a statute. Stern v. Morris, 380 So.2d 1048 (Fla. 3d DCA 1980) (recognizing that decedent had held certain cash funds as a trustee in accordance with section 607.301, Florida Statutes (1979), designating the directors of a dissolved corporation as trustees of the corporate assets). Although the subject of the Sewell case was an express trust and Stem a trust imposed by statute, Florida courts have also applied the trust exception in cases involving resulting trusts and constructive trusts. See, e.g., Hodges v. Logan, 82 So.2d 885 (Fla.1955) (resulting trust); Fisher v. Creamer, 332 So.2d 50 (Fla. 3d DCA 1976) (constructive trust). However, the repeal of the former Florida Probate Law and the adoption of the Code call into question the continued viability of some of the earlier decisions that have applied the trust exception to exclude certain types of claims from the operation of the statute.
In Velzy, 502 So.2d 1297, this court reexamined some of the earlier decisions that have applied the trust exception in the light of the changes to Florida law governing creditors’ claims in probate effected by the adoption of the Code, especially section 733.702. Upon this reexamination, we concluded that the amendments had “so substantially modified the prior ‘nonclaim’ [2] provisions of the Code, that those theories *18 of exception have been substantially altered and narrowed even though some of the later eases continue to pay lip service to the theories and the cases that espoused them.” 502 So.2d at 1299-300. In particular, we noted that a prior exclusion of claims to specific property, real or personal, from the requirements of the claims process had not been included in the Code. 502 So.2d at 1300. We concluded.that the elimination of this exception, when read together with the new statutory language, reflected “the clearly expressed legislative intent [] to bar all claims that arose before the death of the decedent that are not filed as required by section 733.702,” subject to the statutory exceptions. Id. (footnote omitted). Considering the changes to prior law effected by the adoption of the Code and the new statutory language concerning the filing of claims, we summarized the current state of the law relative to the trust exception as follows:
[T]he “trust exception” or “equitable title to specifically identifiable property” exception to the requirements of, the nonclaim statute, as those exceptions pertain to recovery of property from an estate, have effectively been limited to those situations where the decedent clearly held the property on behalf of the actual owner either by way of an express trust or some other clearly defined means. In other words, if a decedent asserted beneficial ownership of the property before his death, a claim to the property would be barred unless filed according to section 733.702. The reason being that the dispute as to ownership, ' creating the cause of action, arose before the decedent’s death because the decedent, prior to his death, adversely claimed the property as his own. If, however, the decedent was merely in possession of the property but made no such assertion of ownership prior to his or her death, the assertion of ownership being made by the personal representative or heirs for the first time after the decedent’s death would not require the filing of a claim. § 733.702.
Id. Consequently, prior decisions applying the trust exception to claims involving resulting trusts and constructive trusts lack continuing vitality. But see Steigman v. Danese, 502 So.2d 463, 469-70 (Fla. 1st DCA 1987) (discussing the trust exception in the context of á claim for the imposition of a constructive trust without consideration of the impact of changes to prior law effected by the adoption of the Code), disapproved on other grounds by Spohr v. Berryman, 589 So.2d 225 (Fla.1991), and order vacated by In re Estate of Danese, 601 So.2d 570 (Fla. 1st DCA 1992). The Velzy court did not specify the “clearly defined means” other than an express trust that might qualify a claim for the recovery of cash or property from a decedent’s estate for exclusion from the operation of the statute. A nonexclusive list of possible candidates might include a trust imposed by statute as in Stem, a bailment, and a lease of personal property.
Applying the teachings of Velzy to the facts of this case, Mrs. Scott was required to file a claim in the estate unless the Decedent held the accounts on her behalf “either by way of an express trust or some other clearly defined means.” See Velzy, 502 So.2d at 1300. But Mrs. Scott did not allege the existence of an express trust or any other clearly defined means by which the Decedent held the accounts on her behalf. On the contrary, the allegations- of her petitions established that the Decedent asserted a claim of beneficial ownership in the accounts before his death. He accomplished this by causing the removal of her name from the Brokerage Account and closing the Money Market Account and transferring the funds into a new account in his name alone. In Velzy, *19 this court found that a decedent’s act of transferring title to a jointly owned boat into his sole name and divesting his wife of her one-half interest in the property was an assertion of beneficial ownership in the boat that rendered the trust exception inapplicable. Consequently, the wife’s claim to the boat was barred as a result of her failure to file a claim in the estate. Velzy, 502 So.2d 1297. In this case, the Decedent’s actions were sufficient under Velzy to require Mrs. Scott to file a timely claim or be barred.
We agree with Ms. Reyes’ argument that Mrs. Scott could not evade the requirement that she file her claim within the time limit imposed by section 733.702 by recasting her creditor’s claim as a request to have the probate court determine the ownership of the accounts. Mrs. Scott’s approach confuses the issue of whether the accounts in question are estate assets with the separate issue of whether she had a claim in her individual capacity against the estate to recover for the Decedent’s allegedly improper actions. Many creditors’ claims may be described ■with a vocabulary generally used to refer to matters involving property ownership. We have all heard one version or another of the common creditor’s lament that a particular debtor “won’t give me back my money.” But the creditor’s use of terminology of this sort does not transform his or her claim into a dispute about the “ownership” of assets. Thus we appreciate that the Decedent’s alleged actions in this case may be described as an unauthorized taking and retention of Mrs. Scott’s “property.” But assuming the truth of her petitions’ allegations, Mrs. Scott was a creditor of the Decedent as a result of actions that he took before his death. Once the Decedent died, Mrs. Scott had a claim against the Decedent’s estate that became barred when she failed to timely file a statement of claim. For this reason, the probate court properly dismissed Mrs. Scott’s petitions that in effect sought authorization to pay a time-barred claim under the guise of requests for a determination of the “ownership” of the two accounts.
We have considered the other arguments made by Mrs. Scott and find them to be without merit. We also conclude that the probate court did not abuse its discretion in denying Mrs. Scott’s petition for an extension of time to file her claim.
Affirmed.
NORTHCUTT and SILBERMAN, JJ., Concur.

. The document examiner’s report did not identify the perpetrator of the alleged forgery. However, in one of her briefs filed in this court, Mrs. Scott names the Decedent as the forger.

. Although section 733.702 and its predecessor statutes have frequently been referred to as the ''nonclaim statute,” it is in fact a statute of limitations. See May, 771 So.2d at 1150-54; Barnett Bank of Palm Beach County v. Estate of Read, 493 So.2d 447 (Fla.1986); see generally Pilotte, Creditors’ Claims and Family Allowance % 8.21.